UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY,

                    Plaintiff,                  14-CV-11676
                                                Hon. Gerald E. Rosen

vs.

MICHAEL MAURICE RENOU,
MICHAEL PHILIP RENOU, SONIA ELIAS,
and SAMOAN ENTERPRISES, LTD.
d/b/a JET'S PIZZA, a Michigan Corporation,

                    Defendants.
_____/

OPINION AND ORDER DISMISSING ACTION,
WITHOUT PREJUDICE

         At a session of said Court, held in
        the U.S. Courthouse, Detroit, Michigan
        on July 24, 2014

        PRESENT:  Honorable Gerald E. Rosen
                            United States District Chief Judge

## I. INTRODUCTION

This declaratory judgment action is presently before the Court on the Defendant Samoan Enterprises, Ltd.'s May 16, 2014 Motion to Dismiss for Lack of Jurisdiction and for Abstention, and the Court's June 10, 2014 Order to Show Cause directing Plaintiff to show cause in writing why the Court should not exercise the discretion afforded it under the Declaratory Judgment Act and decline to entertain this action. Plaintiff has

1

responded and Defendant Samoan has replied.  Having reviewed and considered the

parties' briefs and supporting documents and the entire record of this matter, the Court

finds that the pertinent facts and legal contentions are sufficiently presented in these

materials, and that oral argument would not significantly assist in the resolution of this

matter.  Accordingly, the Court will decide this matter "on the briefs."  *See* Eastern

District of Michigan Local Rule 7.1(f)(2). This Opinion and Order sets forth the Court's

ruling.

## II.  PERTINENT FACTS

Allstate Insurance Company ("Allstate") filed the instant action for declaratory

relief on April 26, 2014 concerning its liability and duty to defend Michael Maurice

Renou and Michael Philip Renou (the "Renou Defendants") in a civil action involving

the Renou Defendants, Samoan Enterprises, Ltd. d/b/a Jet's Pizza, and Sonia Elias,

which was filed in Macomb County Circuit Court on June 28, 2013, and currently

remains pending in that court.  The state court action, *Elias v. Renou et al.,* No. 13-2631-

NI, arises out of an October 2012 automobile accident involving Michael Philip Renou

and Sonia Elias.

According to the state court complaint, on October 4, 2012, Sonia Elias was

turning left on a green turn arrow from southbound Dequindre onto eastbound 15 Mile

Road in Sterling Heights, Michigan when a vehicle driven by Michael Philip Renou

disobeyed a red light while traveling northbound on Dequindre and collided with Ms.

2

Elias's vehicle, causing her injuries. *See* Macomb County Circuit Court Complaint, Defendant Samoan's Motion Ex. A. At the time of the accident, Michael Philip Renou, an employee of Samoan Enterprises, Ltd. d/b/a Jet's Pizza ("Samoan") was on his way back to the Jet's restaurant after having made a pizza delivery. The car Michael Philip was driving was owned by his father and insured through Allstate. The Allstate policy for the vehicle Michael Philip was driving contains a liability limit limiting coverage for bodily injury to $20,000 per person/$40,000 per accident.

Ms. Elias is suing Michael Philip Renou for negligent operation of a motor vehicle. She also alleges that Samoan is vicariously liable for the negligent actions of its employee, Michael Philip Renou.[1]

The state court action is currently only in the discovery phase: Interrogatories have been served; Ms. Elias, Mr. Renou and an independent witness have been deposed; and an order has been entered for Ms. Elias to submit to a medical examination. *See* state court docket, available at http://macombcountymi.gov/eservices/.

The record of the state court action further indicates that the issue regarding insurance coverage for Michael Philip while he was acting as a Jet's delivery person was

---

[1] Ms. Elias also alleged a claim under the Michigan Owner Liability Statute against Michael Maurice Renou, Michael Philip's father and the owner of the automobile he was driving. However, on May 6, 2014, i.e., after Allstate filed the instant declaratory judgment action, Michael Maurice Renou was dismissed from the state court action on a stipulated order. *See* Macomb County Circuit Court docket of this case, available at http://macombcountymi.gov/eservices/.

raised and discussed more than once with the state court judge.  Significantly, the parties discussed with the state court judge Allstate's position that it owed no coverage for the accident because the Renous' insurance policy contained a "business use" exclusion. The state court docket reflects that on April 16, 2014, the state court judge ordered Samoan to file a third-party complaint for declaratory judgment against Allstate and the other parties regarding the insurance coverage issue within thirty days.  *See* state court docket at http://macombcountymi.gov/eservices/; *see also* Defendant Samoan's Motion Ex. B.[2]  Samoan complied with the state court's order, and on April 28, 2014, Samoan and its insurer, Amerisure Insurance Company, filed a third-party complaint for declaratory judgment against Allstate, the Renou defendants, and Sonia Elias.  *Id.*, Ex. C.[3]

_____

[2]  According to Defendant Samoan, at a status conference held in the state court on April 16th, counsel for Defendant Renou told Judge Foster that Allstate was taking the position that Renou did not have coverage based on the "business use" exclusion contained in the Allstate policy. Based on this representation, Samoan -- which by virtue of its vicarious liability for the actions of Renou, its employee, is deemed to also be an "insured person" under the terms of the Allstate policy [*see* Policy, Part I, Insured Persons ¶ 3] -- told the judge that it wished to file a third-party complaint against Allstate and Judge Foster agreed that such complaint should be filed in the Macomb County Circuit Court.

[3]  Allstate blatantly and repeatedly misrepresents several times in its Response to the Court's Order to Show Cause and in its Response to Defendant Samoan's Motion to Dismiss that "Allstate is not a party to the underlying [state court] action" and "the issue of whether [insurance] coverage is available is not before Judge Foster in the State Court action."  *See* Allstate's Response to Order to Show Cause, Dkt. # 17, pp. 7, 8, 9, 10, 12; Allstate's Response to Motion to Dismiss, Dkt. # 10, pp. 7, 8, 9. In light of the facts that (1) Allstate is representing Renou in the state court action (with a reservation of rights) and (2) both of Allstate's Response briefs in this Court were filed more than two months

However, two days before Samoan filed its third-party complaint in the state court, Allstate came to this Court and filed its own declaratory judgment complaint seeking a declaration that the Exclusions provision of the automobile insurance policy issued to the Renous does not provide coverage or require that Allstate indemnify or defend the state court defendants because Michael Philip Renou was engaged in delivering pizzas for his employer at the time of the accident.  According to Allstate, as a matter of law, the "business use" exclusion provision in its insurance policy absolves it from any obligation to indemnify the defendants for the liability asserted against them in the state court action and also relieves Allstate from any obligation to represent or provide a defense for them in the state court action.  Therefore, Allstate contends that it should not be forced to participate in the state court action.

On May 16, 2014, Defendant Samoan Enterprises, Ltd. filed a "Motion to Dismiss for Lack of Jurisdiction Pursuant to F.R.C.P. 12(b)(1) and for Abstention."  After reviewing Allstate's response to Defendant Samoan's motion, the Court decided that it wanted further briefing on the matter.  Therefore, on June 16, 2014, the Court entered an Order to Show Cause directing Allstate specifically to show cause in writing why the Court should not exercise is discretion and decline to entertain its declaratory judgment

---

after the state court's status conference and nearly two months after Samoan, acting pursuant to the state judge's directive, filed and served Allstate with a third-party complaint in the state case seeking a declaratory judgment on the insurance coverage issue, Allstate's counsel's repeated factual misrepresentations in this case come very close to warranting the imposition of sanctions pursuant to Fed. R. Civ. P. 11(b).

action.  For its Response to the Court's Order to Show Cause [Dkt. # 17], Allstate has

presented to the Court a brief containing *verbatim* the same arguments it previously

presented in its Brief in Response to Defendant Samoan's Motion to Dismiss [Dkt. # 10].

III.  DISCUSSION

A.     THE AMOUNT-IN-CONTROVERSY ISSUE

Before proceeding within an analysis of the Court's exercise of discretionary

jurisdiction under the Declaratory Judgment Act, the Court must first address the issue of

subject matter jurisdiction as raised by Defendant Samoan in its Fed. R. Civ. P. 12(b)(1)

motion.  "Subject matter jurisdiction is always a threshold determination." *American*

*Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir.2007) ( citing *Steel Co.*

*v. Citizens for a Better Env't*, 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L. Ed. 2d 210

(1998)).

Allstate Insurance Company filed the instant action in this Court alleging diversity

of citizenship pursuant to 28 U.S.C. § 1332 as the basis for this Court's jurisdiction.  With

respect to the diversity statute's amount in controversy, Allstate alleged in its Complaint

for Declaratory Relief that "the amount in controversy in this action is in excess of

Seventy Five Thousand ($75,000.00) Dollars, exclusive of interest and costs in that the

insurance policy at issue in this declaratory action is in excess of Seventy Five Thousand

($75,000.00) Dollars. . . ."  [Complaint, ¶ 8.]  Defendant Samoan argues in its Motion to

Dismiss that Allstate improperly uses the amount of the insurance policy to measure the

6

amount in controversy and argues that the actual amount in controversy is less than the jurisdictional amount. Therefore, Samoan contends that this case should be dismissed for lack of subject matter jurisdiction.

1.  <u>Applicable Standards</u>

Rule 12(b)(1) motions can attack the claim of jurisdiction either facially or factually. *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges the court's subject matter jurisdiction based upon the sufficiency of the pleadings. In considering a "facial attack," a court will consider the material allegations of fact set forth in the complaint as being true and construe them in a light most favorable to the nonmoving party. *Id.*; *Cooley v. United States*, 791 F. Supp. 1294 (E.D. Tenn. 1992); *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

By contrast, where, as here, subject matter jurisdiction is factually attacked, the plaintiff bears the burden of proving jurisdiction to survive the motion, and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir.1996). In a factual attack of subject matter jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id*. In doing so, the court has wide discretion to consider affidavits and documents outside the complaint, and can even conduct a limited evidentiary hearing, if warranted. *Id*.

7

Consideration of matters outside the pleadings, however, does not convert the Rule

12(b)(1) motion into a Rule 56 motion, as it would under a Rule 12(b)(6) motion.

*Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 195-16 (6th Cir.1986).

    With respect to the Rule 12(b)(1) motion in instant action, Defendant Samoan

does not dispute that the parties are citizens of different states, but it requests that the

court dismiss this action for lack of jurisdiction on the ground that the $75,000 amount in

controversy requirement for diversity jurisdiction is not satisfied.

    "Where subject matter jurisdiction is challenged pursuant to 12(b)(1), the plaintiff

has the burden of proving jurisdiction in order to survive the motion." *Michigan S. R.R.*

*Co. v. Branch & St. Joseph Counties Rail Users Ass'n*, 287 F.3d 568, 573 (6th Cir.2002);

*see also Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir.1990). The

plaintiff must establish subject matter jurisdiction by a preponderance of the evidence.

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780

(1936).

    In a federal diversity action, the amount in controversy alleged in the complaint

normally will satisfy the jurisdictional requirements unless it is shown that the plaintiff

made the claim in bad faith. *Schultz v. General R.V. Ctr.*, 512 F.3d 754, 756 (6th

Cir.2008) (citation omitted). A showing of bad faith is made if the defendant

demonstrates "to a legal certainty" that the original claim was really for less than the

amount-in-controversy requirement. *Id.* (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d

8

150, 157 (6th Cir.1993)).  A demand is legally impossible for jurisdictional purposes
when it runs up against a statutory or contractual cap on damages, *see Pratt Central Park
Limited Partnership v. Dames & Moore, Inc*., 60 F.3d 350 (7th Cir.1995), or when the
theories of damages employ double counting, *see Gardynski–Leschuck v. Ford Motor
Co.*, 142 F.3d 955 (7th Cir.1998).

Defendant Samoan claims that this showing is met here because the Allstate
policy at issue limits Allstate's liability for bodily injury damages to $20,000 per
person/$40,000 per accident.  Therefore, Defendant claims that the maximum amount of
Allstate's exposure in this motor vehicle accident case involving one individual plaintiff
is $20,000, i.e., far less than the jurisdictional amount.

2.    <u>Treatment of Policy Limits in Assessing Subject Matter Jurisdiction</u>

In declaratory judgment actions, the amount in controversy requirement is
measured by "the value of the object of the litigation." *See  Northup Properties, Inc. v.
Chesapeake Appalachia, LLC*, 567 F.3d 767, 770 (6th Cir.2009) (quoting *Hunt v. Wash.
State Apple Adver. Comm'n*, 432 U.S. 333, 347, 97 S.Ct. 2434 (1977)); *Cohn v.
Petsmart, Inc*., 281 F.3d 837, 840 (9th Cir. 2002); *see also South Florida Wellness, Inc.
v. Allstate Ins. Co.*, 745 F.3d 1312 (11th Cir. 2014) ("[T]he value of the object of the
litigation measured from the plaintiff's perspective. . . is 'the monetary value of the
benefit that would flow to the plaintiff if the [relief he is seeking] were granted.'"  *Id.* at
1315-16).

9

Courts that have addressed this issue in the context of insurance coverage disputes have divergent views on how to determine this value.

    The Tenth Circuit has unequivocally held that "[w]here insurance coverage is denied, the maximum 'amount in controversy is the maximum limit of the insurer's liability under the policy.'" *State Farm Mut. Auto. Ins. v. Narvaez*, 149 F.3d 1269, 1271 (10th Cir. 1998) (citing *Farmers Ins. Co. v. McClain*, 603 F.2d 821, 823 (10th Cir.1979)).  The Ninth Circuit similarly holds that a policy's stated liability limit is determinative if the value of the underlying tort claim exceeds the liability ceiling.  *See Budget Rent–A–Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir.1997) (citing 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3710 (2d ed. 1985)). However, some circuits only find policy limits controlling in declaratory judgment actions when the issue is the validity of the entire contract between the parties, -- e.g., when a policy has lapsed due to non-payment of premiums -- but that when the applicability of an insurance policy to a particular occurrence is the question, the amount in controversy is to be measured by the value of the underlying claim.  *See Hartford Ins. Grp. v. Lou–Con, Inc.*, 293 F.3d 908, 911 (5th Cir.2002).  *See also Home Ins. Co. of N.Y. v. Trotter*, 130 F.2d 800, 803 (8th Cir. 1942) (finding that where the issue is the validity or invalidity of a policy, the value of the policy is the amount in controversy.)

    The Sixth Circuit has yet to decide whether the amount in controversy in a

10

declaratory judgment action such as this one should be measured by the policy limits or by the value of the underlying claim, and the Court has found only a few district court cases from this circuit that address this issue.

In *Capitol Specialty Ins. Corp. v. IKO, Inc.*, 2013 WL 6196564 (W.D. Ky. November 26, 2013), the plaintiff Capitol Specialty Insurance had insured IKO, Inc., the owner of a bar in Louisville, Kentucky. A patron of the bar, Nicole Sancomb, allegedly was sexually assaulted on its premises by several other patrons and third parties. She subsequently filed an action in Kentucky state court in which she asserted claims against IKO for negligence, seeking an unspecified amount of compensatory and punitive damages.

Capitol thereafter filed a complaint for declaratory relief in federal court seeking a declaratory judgment declaring that the Assault Limitation provision contained in its policy with IKO limited its duty to defend and indemnify IKO in the state court action to the extent of $25,000, inclusive of attorney fees and court costs. IKO moved to dismiss the federal complaint for lack of federal subject matter jurisdiction arguing that the object of the declaratory judgment action was the assault limit of $25,000 while Capitol claimed the object of the litigation was the amount that Sancomb claimed against IKO in the underlying state action.

Noting that the Sixth Circuit had not decided the issue of how to measure the amount in controversy in insurance coverage declaratory judgment action, the *Capitol*

11

court evaluated cases from other circuits and concluded,

> [T]he amount in controversy should be measured by the value of the underlying claim. The instant case is one in which the court is asked to determine the applicability of an insurance policy to a particular occurrence and, contrary to IKO's assertions, Capitol did not raise the issue of the validity of the policy and its eroding limits provisions [which subtract from the policy limits attorneys' fees or costs incurred in defending a claim] when it filed this action. Rather, Capitol framed the issue as whether the Assault Limitation -- as opposed to the policy's personal injury provision, which contains a $1 million limit of liability -- is the exclusive liability provision applicable to the claims asserted by Sancomb in the underlying state action. Moreover, Capitol's complaint sought only three declarations from the court: (1) that the Assault Limitation "is the exclusive liability coverage form applicable to the claims asserted by Nicole Sancomb in the underlying Complaint;" (2) that Capitol's duty to indemnify IKO in the underlying state action is limited to the Assault Limitation's sub-limit of $25,000; and (3) that Capital has no duty to defend and indemnify IKO upon the exhaustion of the Assault Limitation's sub-limit of $25,000. Each declaration seeks a finding that the Assault Limitation is applicable to Sancomb's claims against IKO. Thus, Capitol is not seeking to void the policy in its entirety, nor has it made any contention regarding the alleged invalidity of the eroding limits provisions contained within it. Therefore, the amount in controversy in this action should be measured by the value of the underlying state court claim.

2013 WL 6196564 at *3 (citations to district court record omitted).

Because Capitol had asserted that the potential value of Sancomb's claim against IKO exceeded $75,000 and submitted with its response to IKO's motion Sancomb's answers to interrogatories in which she indicated that she will seek over $2 million in damages from IKO, the court concluded that Capitol's allegations as to the amount in controversy were made in good faith, and IKO failed refute those allegations by showing to a legal certainty that Capitol's claim could not meet the $75,000 jurisdictional amount.

12

Accordingly, IKO's Rule 12(b)(1) motion to dismiss was denied.

The court in *Grange Mut. Cas. Co. v. Safeco Ins. Co. of America*, 565 F. Supp. 2d 779 (E.D. Ky. 2008), similarly held that it was the value of the underlying claim that was controlling in determining whether the amount in controversy in a declaratory judgment action is satisfied.  In that case,  Safeco Insurance Company, the insurer of the plaintiff in the underlying action, intervened in a declaratory judgment action that had been filed in federal court by the underlying defendant's insurer, Grange Mutual, and moved to dismiss the action alleging that Grange's assertion in its removal petition of satisfaction of the $75,000 amount in controversy was made in bad faith.  The basis for Safeco's motion was an affidavit filed by the plaintiff in the underlying state case stating that his damages did not exceed $75,000.  In light of the plaintiff's affidavit, the court agreed that the underlying damages claim did not exceed $75,000.

However, the *Grange* court found that the fact that the underlying claim was not sufficient to demonstrate satisfaction of the jurisdictional amount did not establish bad faith on Grange's part in asserting that there was more than $75,000 in controversy.  The court explained:

> The fact that the underlying claim is not sufficient for this Court's jurisdiction is not fatal because the *value of the rights Grange Mutual seeks to protect extend beyond merely the value of the underlying litigation*. Grange Mutual seeks a declaration of its rights under an insurance liability policy that provides both for coverage and defense. While attorney's fees and/or defense costs are not normally considered when determining the amount in controversy, *Williamson v. Aetna Life Ins. Co*., 481 F.3d 369, 376 (6th Cir.2007), they are included in the amount in controversy (1) when provided by contract, (2) when

13

provided by a statute that expressly mandates or allows the payment of such fees, and (3) when an insurance company will have to pay the underlying defense costs of the insured.  *See id*.; *Springstead v. Crawfordsville State Bank*, 231 U.S. 541, 541–42, 34 S.Ct. 195, 58 L.Ed. 354 (1913) ("Could such an attorney's fee be considered in determining whether the jurisdictional amount was involved? We think so.... [T]he moment suit was brought the liability to pay the fee became a 'matter in controversy,' and as such to be computed in making up the required jurisdictional amount...."); *see also  Pub. Funding Corp. v. Lawrence County Fiscal Court*, No. 89–5486, 1989 WL 153970, at *2 (6th Cir. Dec. 21, 1989) (unpublished) (finding attorney's fees provided for in a lease to be part of the amount in controversy); *Farmers Ins. Co. v. McClain*, 603 F.2d 821, 823 (10th Cir.1979) (stating that insurer's potential losses can include the value of its obligation to defend its insured in an underlying suit); *Stonewall Ins. Co. v. Lopez*, 544 F.2d 198, 199 (5th Cir.1976) (finding the amount in controversy to include the "pecuniary value of the obligation to defend a separate lawsuit"). Here, under the policy, Grange Mutual must pay the defense costs of its insured. *See* Grange Mutual's Insurance Policy, R. 1, Ex. 2, at A–1 (indicating that Grange will settle or defend claims seeking damages against an insured). Thus, the extent of damage Grange Mutual might suffer -- its potential loss -- is not limited to the value of the state court claim; it also includes the costs it would incur in representing Mr. Damron in the state court action.

562 F. Supp. 2d at 784.[4]

Consequently, the court concluded that Safeco had failed to show to a legal

---

[4]  The *Grange* court's determination that the amount in controversy should include the potential costs of defending the underlying action is consistent with the holdings of a number of circuit courts to have considered the issue.  *See, e.g., Francis v. Allstate Ins. Co.,* 709 F.3d 362, 367-68 (4th Cir. 2013) (holding that the amount in controversy in a declaratory judgment action includes damages recoverable in the underlying lawsuit, costs incurred in defending the underlying lawsuit, and attorneys' fees likely to be incurred in the declaratory judgment action, if allowed under the applicable state law); *Scottsdale Ins. Co. v. Universal Crop Protection Alliance, LLC*, 620 F.3d 926, 932 (8th Cir. 2010);  *Riunione Adriatica Di Sicurta v. Robertson*, 47 F.3d 1173, 1995 WL 66778 (7th Cir. 1995) (remanding declaratory judgment action to the district court for a determination of whether the amount in controversy requirement was met, instructing "the amount in controversy would be the personal injury damages [sought in the underlying lawsuit] plus the costs of defending the suit." *Id.*  at *2).

certainty that the jurisdictional minimum in Grange's declaratory judgment action could not be met. *Id.* at 784-85. Thus, the court determined that Grange's assertion of more than $75,000 in controversy was not made in bad faith, and held that federal jurisdiction was proper. *Id.*

The same is true in this case where the insurance policy provides not only for Allstate's potential liability for payment of damages up to the stated policy limit but also provides for Allstate's defense of the underlying lawsuit and its payment of defense costs and expenses. *See* Allstate Policy, Part I. Therefore, Allstate's potential loss is not limited by the $20,000 per person/$40,000 per accident limit on damages for bodily injury; it also includes the attorneys' fees, costs and expenses it has incurred and continues to incur in representing the defendants in the Macomb County Circuit Court action. Therefore, the Court finds no bad faith on the part of Allstate in asserting satisfaction of the diversity of citizenship amount-in-controversy in the jurisdictional allegations of its Complaint for Declaratory Relief.

B. THE COURT'S DISCRETION TO EXERCISE ITS JURISDICTION

Though the Court has subject matter jurisdiction and *could* entertain this declaratory judgment action, it must also determine whether it *should* do so.

The Federal Declaratory Judgment Act provides that federal courts "may declare the rights and other legal relations of any interested party seeking" a declaration in a controversy over which the court otherwise has jurisdiction. 28 U.S.C. § 2201(a). The

15

Supreme Court has emphasized that this statute does *not* give the litigant an absolute right to a declaratory judgment in the district court; rather it is a grant of power to the court whereby the court, *may*, in its discretion, exercise jurisdiction over such a controversy.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 2142 (1995); *Cardinal Chemical Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95, n. 17, 113 S.Ct. 1967, 1974 n. 17 (1993); *Green v. Mansour*, 474 U.S. 64, 72, 106 S.Ct. 423, 428 (1985).  *See also, Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173 (1942).

As the Court explained in *Wilton v. Seven Falls Co.*, *supra*:

> Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. . . .  The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface. . . .  When all is said and done, we have concluded that "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." . . .

* * *

> "[T]here is nothing automatic or obligatory about the assumption of 'jurisdiction' by a federal court" to hear a declaratory judgment action.  By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.  **Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion,** to stay or **to dismiss an action seeking a declaratory judgment *before trial or after all arguments have drawn to a close*.**  In the declaratory judgment context, **the normal principle that federal courts should adjudicate claims within their**

16

**jurisdiction yields to considerations of practicality and wise judicial administration**.

115 S.Ct. at 2143 (citations omitted and emphasis added).

Consistent with the principles enunciated by the Supreme Court, in a series of cases dating back to at least 1984, the Sixth Circuit has repeatedly found that when a state action is pending or when trial has been completed in a state court, generally that court is in a better position than a federal district court to decide an insurance declaratory judgment action that involves underlying factual issues.  However, the appellate court has emphasized that there is no *per se* rule against a district court's entertaining a declaratory judgment action.  *Allstate v. Mercier*, 913 F.2d 273, 277 (6th Cir. 1990). Rather, it has instructed lower courts that they may entertain a diversity jurisdiction declaratory judgment case if "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and [if] it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984); *Allstate v. Mercier, supra*; *Omaha Property & Casualty Insurance Co. v. Johnson*, 923 F.2d 446, 447-48 (6th Cir. 1991).

In *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964 (6th Cir. 2000), the Sixth Circuit listed five factors first enunciated by the court in *Grand Trunk, supra*, for the district court to consider when assessing the propriety of a declaratory judgment action concerning insurance coverage when the insureds have been sued for alleged tort liability

17

in state court.

    (1)    whether the judgment would settle the controversy;

    (2)    whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

    (3)    whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*";

    (4)    whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

    (5)    whether there is an alternative remedy that is better or more effective.

*1d*. at 968; *see also Allstate v. Mercier, supra*; *Omaha Property & Casualty, supra*;

*Bituminous Cas. Corp. v. J & L Lumber Co., Inc.,* 373 F.3d 807, 812 (6th Cir. 2004).

    Based upon some or all of the foregoing factors in cases similar to the instant action, the Sixth Circuit has repeatedly found it inappropriate for the district courts to entertain insurance declaratory judgment actions.

    For example, in *Allstate Insurance Co. v. Mercier*, *supra*, the district court entered summary judgment in favor of the plaintiff insurer, Allstate, declaring that, based upon its construction and interpretation of a motor vehicle exclusion contained in the Allstate Homeowners Policy at issue, the insurer, Allstate, did not owe any insurance coverage to the Merciers who had been sued in a state court action for the death of Wesley Allmand which resulted from injuries sustained in an automobile accident.  The accident was

18

caused by a teenager, Gary Jaynes, who was driving while intoxicated.  The complaint in

the state action alleged that the Merciers were liable for Allmand's injuries because they

had furnished alcohol to Gary Jaynes in violation of Michigan state law.  No discovery

concerning the underlying accident was taken in the federal court action.  Nonetheless,

the district court determined that, based upon the allegations of the complaint and the

facts alleged in the summary judgment pleadings, the motor vehicle exclusion relieved

Allstate of its obligations under the insurance policy because it found that "the tort was

triggered by the negligent operation of a motor vehicle."

   The Sixth Circuit determined that the district court improvidently exercised its

discretionary authority to entertain Allstate's declaratory judgment action and, therefore,

**reversed and remanded** the action with instructions to dismiss the complaint.  In so

doing, the court explained:

> **The record before us is virtually devoid of facts about the underlying tort action.  We have only the complaint filed [in the state court]** by Patricia Allmand against Mercier and Mair; there are no depositions or other discovery documents.  We cannot ascertain from the record where or when the defendants allegedly furnished liquor to Jaynes; in particular, whether this occurred on one of the insured premises or elsewhere. . . .
>
> **These facts would necessarily be developed at a trial of the tort action, and may have a direct bearing on the determination of whether the insuring clause of the homeowners policies, or the exclusions, control Allstate's obligations.**
>
> **   Courts should not be required to decide rights and other legal relations in a vacuum. . . .  The language of the policy is broad, but . . . we cannot say with certainty that those exclusions preclude a finding of coverage in the present case.  Without any factual record, there is a**

19

**real possibility that the district court's declaration of no coverage would conflict with a state court's determination of the coverage question after being informed of the facts.**

\* \* \*

. . . . The states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation. Finally there is an alternative remedy [under Michigan Court Rule 2.605] which is better or more effective. We have indicated that Michigan provides such a remedy in the very court where the state tort action is pending.

\* \* \*

It is true that in the present case the federal declaratory judgment action does not parallel a state court action arising from the same facts in the sense that different legal issues are presented by the pleadings. Nevertheless, the federal action does parallel the state action in the sense that the ultimate legal determination in each depends upon the same facts. **And there is an alternative state remedy by which the legal determination sought in the federal declaratory action may be made on the basis of a well-developed factual record, rather than the basis of a barren record.**

913 F.2d at 278-279 (citations and punctuation omitted; emphasis added).

As in the *Mercier* case, the record before this Court is equally devoid of material facts concerning the underlying automobile accident, and in particular, the facts concerning Michael Philip's Jet's delivery job and his use of his own car in making pizza deliveries, including on the particular day of the accident in question. As the court in observed in *Bituminous Cas. Corp. v. Combs Contracting Inc.*, 236 F. Supp. 2d 737 (E.D. Ky. 2002), "[a] declaratory action does not serve a 'useful purpose' when insurance coverage questions can only be resolved based on facts yet to be determined in the state

20

court[]." *Id.* at 744.

Allstate argues that there is no need for this Court to await the resolution of any factual issues in the pending underlying state court action before it can rule in this declaratory judgment action because the "business use" exclusion of the insurance policy excludes all liability alleged against Michael Philip Renou.  Therefore, Allstate argues that this Court's resolution of the declaratory judgment action will both settle the controversy and clarify the legal relations at issue.

The insurance policy provision cited and relied upon by Allstate -- and upon which it based its Complaint for Declaratory Relief -- is the "Exclusions -- What is not Covered" provision at p. 7 of the policy:

> Allstate will not pay for any damages an insured person is legally obligated to pay because of:
>
> 1.  **bodily injury or property damage arising out of the use of your insured auto while used to carry persons or property for a charge**, or any auto you are driving while available for hire by the public.  This exclusion does not apply to:
>
>     a)    shared-expense car pools.
>
>     b)    the occasional rental of your insured motor home or travel-trailer to others for personal use if a rental premium is shown on the declarations page for this coverage.

*See* Allstate's Complaint for Declaratory Relief, Ex. 2, "Allstate Property and Casualty Auto Insurance Policy," p. 7 (emphasis added).

Conveniently, in making this argument, Allstate makes no mention of the Policy

Endorsement appended to the policy and brought to the Court's attention by Defendants, the first line of which in bold face print states that "**The following endorsement changes your policy**."  In relevant part, Section C of this Endorsement provides a material exception to the "Business Use" Exclusion cited and relied upon by Allstate.  It states:

> **Under Exclusions -- What is not Covered, items, 1, 4 and 9, *are replaced by the following***:
>
> 1. bodily injury or property damage arising out the use of your insured auto while used to carry persons or property for a charge, or any auto you are driving while available for hire by the public.  **This exclusion does not apply to:**
>
> > a)   shared-expense car pools;
> > b)   use of an insured auto for volunteer or charitable purposes;
> > c)   **use of an insured auto while used to carry persons or property for a charge, if that charge serves to reimburse the insured person for normal operating expense of an insured auto**; or
> > d)   the occasional rental of your insured motor home or travel-trailer to others for personal use if a rental premium is shown on the Policy Declarations for this coverage.

*Id.*, Policy Endorsement, p. 2 (emphasis added).

Clearly subsection (c) of the amended "business use" exclusion provision is called into play here and any construction or application of it will require an examination the facts concerning whether, at the time of accident, Michael Philip Renou was engaged in carrying pizzas for delivery, whether Jet's charged for delivery of its products, and

whether and to what extent those delivery charges were paid to Renou to reimburse him for the use of his car.  The record before this Court is devoid of any such facts.

As noted, the state court action remains pending and is currently only in the discovery phase.  Courts have repeatedly held that "it is a rare case in which federal district court should assert jurisdiction over an insurance company's declaratory judgment action to resolve indemnity issues ancillary to an ongoing state-court case." *See e.g.*, *Nautilus Ins. Co. v. Grayco Rentals, Inc.*, 2011 WL 839549 at *1 (E.D. Ky. Mar. 7, 2011) (and cases cited therein).  Indeed, the Sixth Circuit has held that "declaratory judgment actions seeking an advance opinion on indemnity issues are *seldom helpful* in resolving an ongoing action in another court."  *Manley, Bennet, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 792 F.2d 460, 463 (6th Cir. 1986) (emphasis added).

While it is true that in *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008), the appellate court held that in deciding to decline to exercise its discretionary jurisdiction over a declaratory judgment action, the district court should only have considered whether the federal action would settle the precise controversy presented and should not have considered whether it would resolve the underlying state court action, the court also noted that the Sixth Circuit decisions on this issue are split and other cases hold that it is the settlement of the entire underlying dispute that must be considered in weighing the "settlement of the controversy" and the "clarification of the relationship of

23

the parties" factors.[5]  *See e.g., Travelers Indem. Co. v. Bowling Green Prof'l Assocs.*, 495

F.3d 266, 271 (6th Cir. 2007); *Bituminous Cas. Corp. v. J & L Lumber*, 373 F.3d at 813.

Yet, in both of these divergent lines of cases, the Sixth Circuit stressed that it is a matter

within the district court's discretion to decide.  Moreover, subsequent cases have

clarified that the *Flowers* view that the declaratory judgment action need only settle the

insurance controversy and clarify the legal relations between the parties in the district

court should apply only where the district court in the declaratory judgment action will

only have to decide purely legal questions or engage in fact-finding that does *not* affect

the parties in the underlying action.  *See e.g., Cincinnati Ins. Co. v. Richie Enterprises,*

*LLC*, 2013 WL 600174 (W.D. Ky Feb. 13, 2013).

   As indicated above, the fact-finding that would be required of this court would

most assuredly affect the parties and the state court's ultimate decision in the underlying

action.  Indeed, if the Court were to proceed with the instant declaratory judgment matter

and make factual findings concerning Renou's use of his car for delivering pizzas and his

precise delivery activities at the time of the accident, as it would have to do to decide

whether the policy exclusion relied upon by Allstate applies, there is a risk that any ruling

by this Court could operate to collaterally estop Renou from litigating the factual

---

   [5]  This latter factor is closely related to the first factor and the two are often
considered in tandem.  *See e.g., Travelers*, 495 F.3d 271-72; *Bituminous Cas. Corp. v. J*
*& L Lumber Co.*, 373 F.3d 807, 814 (6th Cir. 2004); *Northland Ins. Co. v. Title Guar.*
*Co*, 327 F.3d 448, 454 (6th Cir. 2003).

underpinnings in the state court.  Such a collateral estoppel/*res judicata* effect weighs heavily against the Court exercising its jurisdiction.  *See Allstate Insurance Company v. Redd*, 2005 WL 3008592 (E.D. Mich. Nov. 4, 2005).

The remaining *Grand Trunk* factors -- i.e., whether the court's adjudication of the declaratory judgment matter would cause friction with the state court and encroach upon state jurisdiction, and whether there is an alternative remedy available -- also weigh against the Court exercising jurisdiction over this matter.

The Supreme Court has cautioned that "where another suit, involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed."  *Wilton*, 515 U.S. at 283 (quoting *Brillhart*, 316 U.S. at 495).  Here, there is a very real risk that a declaratory judgment by this Court might be decided differently than if the insurance coverage dispute were resolved by the state court which has the full factual record before it.   Furthermore, the matter before this Court presents no issues of federal law and Allstate has an alternative means to obtain the precise relief it requests here in the Macomb County Circuit Court.

For all of the foregoing reasons, guided by the Supreme Court's admonishment against "gratuitous interference" with a state court's action and in the interests of federalism and comity, this Court finds that the scales tip in favor of declining to exercise jurisdiction over Allstate's Complaint for Declaratory Relief.

25

<u>CONCLUSION</u>

Therefore, for all of the reasons set forth above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant Samoan Enterprises, Ltd.'s Motion to

Dismiss **[ Dkt. # 4]** be, and hereby is, GRANTED.  Accordingly,

IT IS FURTHER ORDERED that this case be, and hereby is, DISMISSED

without prejudice to the parties' rights to proceed with a declaratory judgment action in

the state court.


s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  July 24, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or
counsel of record on July 24, 2014, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135

26